UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

INGRID SANDERS,

        Plaintiff,

v.                                       Civil Action No. 4:06cv57

MEDTRONIC, INC.,

and

SENTARA HOSPITALS t/a
SENTARA CAREPLEX HOSPITAL,

        Defendants.

## ORDER AND OPINION

Currently before the court are the plaintiff's, Ingrid Sanders, "Motion to Remand to State Court" filed on May 3, 2006, and defendant Sentara Hospitals' ("Sentara") "Motion to Dismiss", filed on April 17, 2006, and "Motion to Strike Plaintiff's Brief in Opposition", filed on May 9, 2006. The court has reviewed the record and finds that a hearing is unnecessary for the resolution of the issues presented. For the reasons set out herein, the court **GRANTS** the plaintiff's motion to remand and **ORDERS** this case remanded to the Circuit Court for the City of Hampton, Virginia. Accordingly, this court does not have jurisdiction to rule on Sentara's motion to dismiss or motion to strike.

## I.    Factual Background

Plaintiff Ingrid Sanders, who is a citizen and resident of the Commonwealth of Virginia, alleges breach of express and implied warranty claims against the defendants, Medrontic, Inc. ("Medtronic") and Sentara, for the injuries she suffered as a result of the surgical implantation of two

1

Medtronic Synergy Model 7427 Implantable Pulse Generators ("Medtronic IPG") in her back. Medtronic is a citizen of the State of Minnesota where it is incorporated and has its principal place of business. Sentara is a Virginia corporation with its principal place of business in Virginia.

On November 24, 2003, in an attempt to alleviate chronic back pain, the plaintiff had a Medtronic IPG surgically implanted in her back at Sentara Careplex Hospital in Hampton, Virginia. Medtronic manufactured this device, and Sentara sold the device to the plaintiff. In relation to this procedure, the plaintiff claims that the defendants provided her with literature that stated, "The battery life of the pulse generator depends on the number of hours you use it each day and how strong the stimulation must be to control your pain. *Your doctor can give you an estimate once your pulse generator settings have been determined.*" (Mot. for J. ¶ 12.) The plaintiff claims that her surgeon told her that the battery life estimate for the Medtronic IPG device was four to five years.

On or about May 5, 2004, the battery in the Medtronic IPG failed, which made the device inoperative. On May 19, 2004, at Sentara Careplex Hospital in Hampton, Virginia, the Medtronic IPG and/or its battery was surgically removed from the plaintiff and replaced with a functioning battery. Medtronic also manufactured this second device, and Sentara sold the device to the plaintiff. However, in October 2004, this second battery also failed which again made the device inoperative. The defendant claims that as a result of the failure of these batteries, she has suffered continued chronic back pain, undergone surgery and hospitalization, suffered pain associated with such surgery, and incurred medical expenses and ongoing physical disability. The plaintiff asserts breach of implied and express warranties against the defendants and seeks $1,000,000 in damages jointly and severally against Medtronic and Sentara.

## II.   Procedural History

On March 3, 2006, the plaintiff filed a Motion for Judgment in the Circuit Court for the City

2

of Hampton, Virginia. On April 14, 2006, Medtronic removed the case to federal court based on diversity jurisdiction because the amount in controversy is more than $75,000.00 and Medtronic is a citizen of the State of Minnesota. In its notice of removal, Medtronic acknowledged that diversity would not exist if Sentara, a Virginia citizen, remains in the case. However, Medtronic asks the court to disregard Sentara for purposes of diversity jurisdiction because Sentara has been fraudulently joined as an original party to this action.

On April 17, 2006, Sentara filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  On May 3, 2006, the plaintiff filed a motion to remand the case to state court, and on May 4, 2006, she filed her response to Sentara's motion to dismiss. On May 9, 2006, Sentara filed its rebuttal brief and a motion to strike the plaintiff's brief in opposition to Sentara's motion to dismiss. On May 16, 2006, Medtronic filed a brief in opposition to the plaintiff's motion to remand. On May 19, 2006, the plaintiff filed a rebuttal brief to her motion to remand. Thus, the plaintiff's motion to remand is now ripe for review.

### III.    Standard of Review

The rules governing removal to federal court based on diversity jurisdiction are more narrow than those governing cases originally brought in federal court. Federal law forms the basis for diversity jurisdiction in federal courts.  See 28 U.S.C. § 1332.  If jurisdiction is predicated on diversity and not on a federal question, a state court "action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

However, the doctrine of fraudulent joinder permits a federal judge to disregard non-diverse parties to the claim, thereby creating subject matter jurisdiction for the federal court even in the absence of complete diversity.  Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999).  "In order to

establish that a non-diverse defendant has been fraudulently joined, the removing party must establish either: 'That there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." Id. (citing Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992)). Furthermore, the Fourth Circuit explains that "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Id. (citations omitted).

In Linnin v. Michielsens, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005), this court previously held that the "no possibility" standard cannot be mechanically applied given the Fourth Circuit's contradicting description of the fraudulent joinder doctrine in AIDS Counseling & Testing Centers v. Group W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990), which states:

> "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists. In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming."

AIDS Counseling & Testing Centers v. Group W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990)(citing Lewis v. Time Inc., 83 F.R.D. 455, 460 (E.D.Cal. 1979))(citations omitted).

In Lennin, this court explained that the "'real intention' formulation . . . is significantly at odds with the less subjective 'no cause of action' language . . . ." Linnin, 372 F. Supp. 2d at 818 (citing Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 947 (D. Md. 2004)). The court observed that the Fourth Circuit's "focus shifts between the plaintiff's ability to sue and the plaintiff's

intention of getting a joint judgment -- two very different questions." Id.

Furthermore, this court observed that, on a motion to remand, a court has the "authority to look beyond the pleadings and consider summary-judgment-type evidence, such as the affidavits and the depositions accompanying either a notice of removal or a motion to remand." Id. at 819.  In Lennin, this court explained that this level of review is more akin to a motion for summary judgment, even though the "no possibility" test, on its face, seems similar to the level of review allowed for a motion to dismiss. Id. at 818.  Based on these contradictions, the court held that the "no possibility" test should be applied "not rigidly[] but reasonably." Id. Thus, the court held that the proper test for fraudulent joinder is "whether the defendant has demonstrated there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no *reasonable* basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (citing Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004))(emphasis added).

Thus, because both the plaintiff and Sentara are Virginia citizens for jurisdictional purposes, this case, which is based on diversity jurisdiction, cannot remain in federal court unless Medtronic can demonstrate that there is no reasonable basis for which the plaintiff may be able to recover against Sentara. In making this determination, the court is mindful that depriving a defendant of its statutory right to a federal forum is substantial, and that if a case is remanded to state court, ordinarily, the defendant forever loses its right to a federal forum as well as any possibility of a review of the court's decision to remand.  See 28 U.S.C. § 1447(d).  This court therefore will scrutinize every attempt to deprive a defendant of his right to a federal forum, and will only remand if it is clear that jurisdiction is improper at the federal level.

However, the court is also mindful that it is "obligated to ensure that removal procedure is

fair to 'both plaintiffs and defendants alike.'" <u>Linnin v. Michielsens</u>, 372 F. Supp. 2d 811, 817 (E.D. Va. 2005) (quoting <u>McKinney v. Board of Trustees of Mayland Community College</u>, 955 F.2d 924, 927 (4th Cir. 1992)). Moreover, the Fourth Circuit has held that courts should "'resolve all doubts about the propriety of removal in favor of retained state court jurisdiction.'" <u>Hartley v. CSX Transp.</u>, 187 F.3d 422, 425 (4th Cir. 1999)(quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993)).

## IV.    Discussion

In her Motion for Judgment, the plaintiff claims that both defendants have breached express and implied warranties allegedly made to her with regard to the Medtronic IPG devices that were surgically implanted in her back. Furthermore, in her motion to remand, the plaintiff claims that her claims should be remanded to state court because diversity jurisdiction does not exist. However, Medtronic claims that Sentara has been fraudulently joined because the plaintiff does not have a valid cause of action against Sentara. Specifically, Medtronic argues that the plaintiff's claims against Sentara are without merit because (1) Sentara is not a "seller" of Medtronic IPG's under the Uniform Commercial Code ("U.C.C."), as adopted by Virginia, and thus, cannot be liable for breach of warranty, and (2) the plaintiff has failed to file her claims against Sentara under the Virginia Medical Malpractice Act. The court addresses each of these arguments in turn.

### A.    Breach of Warranty

The plaintiff claims that the defendants breached both express and implied warranties with regard to the Medtronic IPG. However, Medtronic argues in its response to the plaintiff's motion to remand that there is no possibility that the plaintiff could recover against Sentara for either breach of express or implied warranties because Sentara is not a "seller" under the U.C.C. since a hospital is principally a provider of services, not a seller of goods. Furthermore, Medtronic argues that,

6

regardless of whether Sentara is a "seller" under the U.C.C. , the plaintiff has  not alleged facts that establish claims for breach of express or implied warranties.

        1.        **"Seller" under the U.C.C.**

The U.C.C., as adopted by Virginia, applies to transactions involving the sale of goods. Thus, in order to establish a claim for breach of either express or implied warranties against Sentara for the sale of the Medtronic IPG devices, the plaintiff must be able to show that Sentara is a "seller" of goods under the U.C.C., and that the transfer of the device to the plaintiff constituted a sale of goods under the U.C.C..  The Virginia Code defines a "seller"as "a person who sells or contracts to sell goods." Va. Code Ann.§ 8.2-103(d).

Medtronic claims that Sentara cannot be liable for breach of warranty claims because Sentara is principally a provider of services, not a seller of goods. Although Medtronic cites numerous cases from other states to support its argument, it only points to three Virginia cases that this court finds relevant in determining whether Sentara can be a "seller" of goods under Virginia law: <u>Coffman v. Arthrex, Inc.</u>, 2005 Va. Cir. LEXIS 143 (Va. Cir. Ct. March 31, 2005), <u>Commonwealth Department of Taxation v. Bluefield Sanitarium, Inc.</u>, 216 Va. 686 (1976), and <u>Gressman v. Peoples Service Drug Stores, Inc.</u>, 10 Va. Cir. 397 (Va. Cir. Ct. 1988). Because, on a motion to remand, this court must predict whether there is any reasonable possibility that Sentara could be held liable under *Virginia* law, the court must focus on these Virginia cases, not cases from other states. A summary of the relevant case law is set forth below followed by the court's analysis.

 First, Medtronic cites <u>Coffman v. Arthrex, Inc.</u>, 2005 Va. Cir. LEXIS 143 (Va. Cir. Ct. March 31, 2005), an unpublished case from the Circuit Court of Augusta County. In <u>Coffman</u>, the plaintiff had undergone surgery to repair her rotator cuff. During the surgery, a biodegradable screw was inserted into her shoulder. <u>Id.</u> at *1-2. The screw later broke off which caused the plaintiff to

undergo additional surgery. Id. The screw had been manufactured by Arthrex, who sold the screw to the hospital to use during the procedure. Id. The plaintiff sued Arthrex for negligent manufacture and breach of implied warranties. Id. at *2-3.  The plaintiff sued the hospital for breach of implied warranties.  Id. The hospital filed a demurrer arguing that the plaintiff had failed to state a valid cause of action because the hospital is not a "seller"of goods. Id. at *1.

The Circuit Court of Augusta County sustained the demurrer, explaining that a hospital is a health care provider, and a "health care provider is not a 'seller' and is not subject to liability on a products liability theory." Id. at *6.  The court further explained that, "health care providers render a service to their patients, and the transfer of any type of good/device to the patient during treatment is merely incidental to that treatment." Id. However, in rendering this decision, the circuit court acknowledged that "[t]here apparently is no Virginia case directly on point." Id. at *4.  Furthermore, the circuit court explains that the only case that could possibly "shed some light upon how the Virginia Supreme Court w[ould] rule upon this issue is the case of Commonwealth Department of Taxation v. Bluefield Sanitarium, Inc., 216 Va. 686 (1976)." Id. at *4.

Bluefield Sanitarium is a tax case from 1976, and is also the second Virginia case that Medtronic cites to support its claim that Sentara cannot be a "seller" of goods under Virginia law. In Bluefield Sanitarium, the Supreme Court of Virginia had to determine whether a private hospital was exempt from sales tax on the hospital's bulk purchase of drugs from the drug manufacturers and wholesalers. Id. at 687. The hospital dispensed the drugs at issue to its patients. Id. The Supreme Court of Virginia held that the hospital was not exempt from the sales tax because the "Retail Sales and Use Tax Act treats a hospital not as a retailer, but as a consumer of all tangible personal property acquired by it for its use in the operation of a hospital." Id. at 688. In making its determination, the Supreme Court of Virginia explained that "[a] hospital is engaged primarily in rendering services,

and the meals, drugs, bandages, etc. provided its patients are incidental to the rendition of these services." Id. The court explained that the portion of the Code on which the hospital relied to make its argument that it should be exempt from sales tax was designed to "relieve *patients* of [sales] tax, not to relieve persons 'engaged in essentially service businesses.'" Id. at 690.

As stated above, the Coffman court cites Bluefied Sanitarium as the only Supreme Court of Virginia case that could possibly shed some light on how the court might rule on the issue of whether a hospital could be considered a "seller" of goods used in its rendering of services to patients. Coffman, 2005 Va. Cir. LEXIS 143 at *4. However, although the Coffman court ultimately sustained the hospital's demurrer, it acknowledged that Bluefield Sanitarium "is a tax case, there are many different policy considerations, and there is nothing in this case which would bind the Supreme Court when it considers the case at bar." Id.

After looking to relevant case law from other states, the Coffman court made the following summary of its analysis:

> Circuit Courts are not policy makers. In fact, it is the function of these Courts to follow the policy dictates of the Legislatures and Appellate Courts which do dictate policy. There is nothing in the Uniform Commercial Code as adopted by Virginia and nothing in Chapter 21.1 of Title 8.01 of the Code of Virginia, Medical Malpractice, which states that supplying a patient with a device for a fee is not a sale, and that a health care provider could not be liable, under such circumstances, on a products liability theory. However, it appears to be that had the General Assembly intended health care providers to be treated as "merchants," such a provision would have been covered in the Medical Malpractice Act. It clearly is not. Because of that, and in the absence of any Virginia Supreme Court case suggesting that plaintiff can proceed on a products liability theory, the Court is of the opinion that the Demurrer ought to be sustained. The Court is of the opinion that health care providers render a service to their patients, and the transfer of any type of good/device to the patient during treatment is merely incidental to that treatment. The health care provider is not a "seller" and is not subject to liability on a products liability theory.

Id. at * 5-6.

The third Virginia case on which Medtronic relies is Gressman v. Peoples Service Drug

9

Stores, Inc., 10 Va. Cir. 397 (Va. Cir. Ct., 1988), which is a case from the Circuit Court of Richmond. In Gressman, the plaintiff sued a pharmacy for breach of warranty and negligence for dispensing the wrong medication pursuant to a physician's prescription. Id. at 397-400. The court held that the pharmacist could not be held liable for breach of warranty because, as a "health care provider" under the Virginia Medical Malpractice Act, the pharmacist was engaged primarily in the business of providing a service, rather than the sale of goods. Id. at 409.

Based on the above cases, Medtronic argues that Sentara cannot be held liable for breach of warranty because Sentara is not a "seller" pursuant to the U.C.C.  As stated above, Medtronic bears the heavy burden of demonstrating that there is no reasonable possibility that the plaintiff might be able to recover against Sentara. As explained below, this court cannot say that Medtronic has met this heavy burden as to this issue based on the above cited Virginia law.

Of the three Virginia cases that are relevant to this issue, Coffman is the most on point. Although Coffman held that a hospital as a health care provider is not a seller of goods, it appears to this court that it did so with trepidation and only after acknowledging that the state supreme court tax case on which it relied was based on completely different policy considerations and would not bind the state supreme court in any way should it have the opportunity to review its opinion. Furthermore, the Coffman court acknowledged that "[t]here is nothing in the Uniform Commercial Code as adopted by Virginia and nothing in Chapter 21.1 of Title 8.01 of the Code of Virginia, Medical Malpractice, which states that supplying a patient with a device for a fee is not a sale, and that a health care provider could not be liable, under such circumstances, on a products liability theory." Id. at * 5-6. Unfortunately, the Supreme Court of Virginia never had the opportunity to review Coffman to answer the exact issue pending before this court. Thus, this court is left to determine whether there is any reasonable possibility that a Virginia court would rule against Sentara

10

if confronted with this issue.

In reviewing, <u>Coffman</u>, this court is keenly aware that, "[w]here neither a state's supreme court nor its intermediate appellate courts have ruled on an issue, a federal court is not bound by an unpublished trial court decision." <u>Simpson v. Duke Energy Corp.</u>, 1999 U.S. App. LEXIS 21553 at * 15 (4th Cir. 1999). Moreover, as the plaintiff points out in her rebuttal brief, <u>Coffman</u> is distinguishable from the instant case in that the allegedly defective item in <u>Coffman</u> was simply a screw which was a part of the rotator cuff repair procedure. However, in the instant case, the entire purpose of the procedure was to implant the allegedly defective Medtronic IPG, which constituted approximately $22,000 of the plaintiff's $44,382.57 hospital bill. Based on these distinguishing attributes and the fact that the <u>Coffman</u> court acknowledges that the Supreme Court of Virginia could rule differently, the court finds that <u>Coffman</u> is not persuasive enough for this court to deprive the plaintiff of her only opportunity to try to recover from Sentara for her alleged injuries.

As to <u>Bluefield Sanitarium</u>, this court, like the <u>Coffman</u> court, is concerned by the fact that <u>Bluefield Santiarium</u> is a tax case which was decided under completely different policy considerations and had nothing to do with a hospital's potential liability for breach of warranty or an individual's right to recover for her injuries. Although the Supreme Court of Virginia might be compelled to consider its analysis in <u>Bluefield Sanitarium</u> in deciding the instant case, <u>Bluefield Sanitarium</u> is significantly distinguishable from the instant case for this court to conclude that there is no reasonable possibility that the Supreme Court of Virginia would find that Sentara is not a seller under the U.C.C..

As to <u>Gressman</u>, the court recognizes that the circuit court found that a pharmacist, as a health care provider, is primarily a provider of services, rather than a seller of goods. However, the court does not feel that a circuit court case from 1988 involving the liability of a pharmacist for

breach of warranty is compelling enough for this court to say with certainty that a Virginia court could not reasonably find that Sentara, a hospital, is a "seller" of goods in the instant case. Even when combined with <u>Bluefield Santitarium</u> and <u>Coffman</u>, <u>Gressman</u> does not convince this court that a hospital cannot be a "seller" under Virginia law.   Accordingly, with respect to Medtronic's argument that Sentara is not a "seller", the court finds that the Virginia case law set forth by Medtronic is insufficient to convince this court that there is no reasonable possibility that a Virginia court could find that Sentara is a "seller" of the Medtronic IPG devices in this case.

In making this determination, the court acknowledges that this is not a clear cut case because the Supreme Court of Virginia has not addressed the specific issue presented, and the few lower court cases that have are distinguishable from the case at hand.  Thus, the court is guided by the Fourth Circuit's discussion of fraudulent joinder as set forth in <u>Hartley v. CSX Transportation, Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999).

In <u>Hartley</u>, the Fourth Circuit reviewed a district court's denial of a motion to remand and its subsequent certification of an interlocutory appeal with regard to its order denying the motion to remand. <u>Id.</u> at 423-24. The question in <u>Hartley</u> was whether South Carolina law precluded the plaintiff from suing certain non-diverse government defendants after her car collided with a train. <u>Id.</u>  No South Carolina court had squarely addressed the issue. <u>Id.</u>

The Fourth Circuit reversed the district court's denial of the motion to remand explaining that it could not "say with certainty that a . . . state court would find [the plaintiff's] claims barred" and that "there [wa]s at least some possibility that plaintiff [would] recover against the [non-diverse] defendants." <u>Id.</u>  The court further explained:

> Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly "novel" issue such as this

> cannot be the basis for finding fraudulent joinder. The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery.
>
> Further, courts should "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." The district court in this case was sufficiently doubtful about the propriety of removal that it certified this interlocutory appeal. The district court instead should have resolved its doubts in favor of remanding the case to state court.

Id. (quoting Marshall, 6 F.3d at 232).

The court further explained:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve . . . various uncertain questions of law and fact. . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> The district court erred by delving too far into the merits in deciding a jurisdictional question. The district court should not have made its own determination concerning the novel application of the . . . [state rule at issue in this case]. It also incorrectly placed the burden on [the plaintiff] to show that her claims may succeed rather than requiring [the defendant] to negate all possibility of recovery. The issues that the district court attempted to resolve are properly left to the state court for later stages of litigation.

Id. at 425 (citations omitted).

In the instant case, the court is faced with a similar situation as the court in Hartley in that the Supreme Court of Virginia has not squarely held that a hospital is not a "seller" under the commercial code for devices it sells to its patients. The court acknowledges that a state court may very well deny the plaintiff's claims against Sentara, as the Circuit Court of Augusta County did in Coffman. However, the Fourth Circuit stressed in Hartley that the burden is on the non-moving party to negate the possibility of recovery, and as long as there is a "glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Hartley v. CSX Transportation, Inc., 187 F.3d 422, 426 (4th Cir. 1999).

Accordingly, in this case, with respect to Medtronic's argument that Sentara is not a "seller", the court finds that existing Virginia law is insufficient to convince this court that there is no reasonable possibility that a Virginia court could find that Sentara is a "seller" of the Medtronic IPG devices in this case. Thus, the court finds that Medtronic has not met its burden as to its argument that Sentara cannot be a "seller" under the U.C.C.

**2.   Individual claims for breach of express and implied warranties**

Medtronic argues that in addition to the fact that Sentara is not a "seller" under the commercial code, the plaintiff has not alleged facts sufficient to support her claims for breach of express and implied warranties, including the implied warranty of merchantability or the implied warranty of fitness for a particular purpose.   Because this court has already determined that Medtronic has not met its burden of demonstrating that there is no reasonable possibility that a Virginia court would find that Sentara is a "seller", this court must determine whether the plaintiff has alleged facts to support each individual claim if a Virginia court were to find that Sentara is a "seller" of the Medtronic IPG devices.

**a.   Express Warranty**

Virginia Code section 8.2-313, which is part of the Uniform Commercial Code as adopted in Virginia, provides:

(1) Express warranties by the seller are created as follows:

   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

   (c) Any sample or model which is made part of the basis of the bargain creates an

express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Va. Code Ann. § 8.2-313.

In this case, the plaintiff alleges in her Motion for Judgment that the defendants provided documentation to the plaintiff that stated the following:  "The battery life of the pulse generator depends on the number of hours you use it each day and how strong the stimulation must be to control your pain. *Your doctor can give you an estimate once your pulse generator settings have been determined*." (Mot. for J. at 12)(emphasis in original). The plaintiff claims that the surgeon responsible for implanting the device gave her a battery life estimate of four to five years.

The problem with the plaintiff's breach of express warranty claim as against Sentara is that the plaintiff has not alleged any facts that suggest that Sentara made any express warranties to the plaintiff regarding the Medtronic IPG devices. Even if Sentara gave the defendant the documentation to which the plaintiff refers, which is not clear from the Motion for Judgment, such documentation does not contain an express warranty. It simply states that her doctor can give her an estimate for the battery life. Furthermore, the plaintiff's surgeon, who is not a party to this case and not an employee of Sentara, gave her the estimation of four to five years. Thus, the court agrees with Medtronic that, even if Sentara is a "seller" under the commercial code, the plaintiff has not alleged facts sufficient to state a claim against Sentara for breach of express warranty.

**b.    Implied Warranty of Merchantability**

Virginia Code section 8.2-314, which sets forth the implied warranty of merchantability

under the Uniform Commercial Code as adopted in Virginia, provides: "Unless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Va. Code Ann. § 8.2-314. The code further defines "merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill." Va. Code Ann. § 8.2-104.

Medtronic argues that Sentara cannot be held liable for breach of implied warranty of merchantability because, in addition to Sentara not being a "seller" under the commercial code, it is not a "merchant." Medtronic claims that the plaintiff is faced with an even higher burden in proving that Sentara is a "merchant", than proving that Sentara is a "seller". To support its argument that Sentara is not a "merchant", Medtronic points to the Official Comment to section 8.2-314, which states "[a] person making an isolated sale of goods is not a 'merchant' within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply." Va. Code 8.2-314 cmt. 3.  Medtronic argues that Sentara's sale of the Medtronic IPG devices in this case was an isolated sale of goods because Sentara ordered only what the physician prescribed, did not manufacture, label, market or distribute the devices or any accompanying literature, and did not keep the devices in stock.

However, Medtronic has submitted an affidavit of John Andrew Seaman, III, an employee of Medtronic, which states that his job "include[s] providing technical support and supporting sales for Medtronic spinal cord stimulator systems prescribed by area surgeons for implantation at Sentara

16

Careplex Hospital ("Sentara") in Hampton, Virginia", and that he has "worked with Sentara Careplex Hospital as an employee of Medtronic, Inc. in this regard for four (4) years." (Seaman Aff. ¶ 3-4.) Such statements suggest that Sentara's sale of the Medtronic IPG devices in this case was not an isolated sale of goods, but part of a continued practice of selling Medtronic spinal cord stimulator systems to its patients. Furthermore, in its position as a hospital, Sentara arguably "h[e]ld[] [it]self out as having knowledge or skill peculiar to the practices or goods involved in the transaction." Va. Code Ann. § 8.2-104.  Therefore, it is not unreasonable to predict that a Virginia court could find that Sentara is a "merchant" for purposes of this action under Virginia law.  Accordingly, the court finds that Medtronic has not shown that there is no reasonable possibility that Sentara could be held liable for breach of implied warranty of merchantability with respect to the devices implanted in the plaintiff's back.

### c.     Implied Warranty of Fitness for a Particular Purpose

Virginia Code section 8.2-315, which is also part of the Uniform Commercial Code as adopted in Virginia, provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." Va. Code Ann. § 8.2-315. The Official Comment to this section further explains that, "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."  Va. Code Ann. § 8.2-315, cmt. 2.

In this case, the plaintiff is not able to show that Sentara had reason to know any *particular* purpose for which the Medtronic IPG devices were intended because the plaintiff's intended use was the ordinary use for such devices. Accordingly, the plaintiff has not alleged facts sufficient to state a claim for breach of the implied warranty of fitness for a particular purpose.

In sum, the court finds that Medtronic has shown that the plaintiff has not alleged facts sufficient to state claims against Sentara for breach of express warranty and implied warranty of fitness for a particular purpose, but has alleged facts sufficient to state a claim for breach of implied warranty of merchantability. The court notes that this does not mean that the court believes that the plaintiff would necessarily prevail on her claim, but that Medtronic has not demonstrated that there is no reasonable possibility that the plaintiff could recover from Sentara based on a claim for breach of implied warranty of merchantability. The court notes that although this court has interpreted the "no possibility" rule to mean "no reasonable possibility", such reasonableness should be broadly interpreted, as the Fourth Circuit has stated that in order to grant a motion to remand, "there need be only a slight possibility of a right to relief." Hartley v. CSX Trans., Inc., 187 F.3d 422, 426 (4th Cir. 1999).

**B.    Virginia Medical Malpractice Act**

Finally, Medtronic argues that the plaintiff has failed to state a valid claim against Sentara because she did not file her claims pursuant to the Virginia Medical Malpractice Act ("the Act"), which provides for certain procedures associated with claims brought against health care providers. Medtronic claims that the Act is the plaintiff's sole remedy against the hospital because Sentara is a "health care provider" under the Act, and the Act covers all "malpractice" against "health care providers." Medtronic points to the current definition of "malpractice" under the Act:

18

> *"Malpractice"* means any tort action or *breach of contract action for personal injuries* or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

Va. Code Ann. § 8.01-581.1 (second emphasis added).

Because the current definition of "malpractice" includes "breach of contract action[s] for personal injuries", Medtronic argues that the plaintiff's beach of warranty claims, which arise out of contract under Virginia law, are covered by the Act.

However, the plaintiff points out that the inclusion of the phrase "breach of contract action for personal injuries" was only added to the definition of "malpractice" in 2005, and, at the time the plaintiff's injuries accrued, the Act did not cover such breach of contract actions. Medtronic acknowledges the 2005 amendment but argues that the plaintiff's claims are still invalid because "even prior to the amendment, it was recognized that the Act covers all conduct that is 'an inseparable part of the health care being rendered . . . .'" (Medtronic Br. in Opp. at 21)(citing Hagan v. Antonio, 240 Va. 347, 397 (1990)).

The Supreme Court of Virginia has held that "[a]s a general rule, there is a presumption that a substantive change in law was intended by an amendment to an existing statute." Dale v. City of Newport News, 243 Va. 48, 51 (1992) (citing Richmond v. Sutherland, 114 Va. 688, 693 (1913)). Section 8.01-1 of the Virginia Code provides:

> [A]ll provisions of this title shall apply to causes of action which arose prior to the effective date of any such provisions; provided, however, that the applicable law in effect on the day before the effective date of the particular provisions shall apply if in the opinion of the court any particular provision (i) may materially change the substantive rights of a party (as distinguished from the procedural aspects of the remedy) or (ii) may cause the miscarriage of justice.

Va. Code Ann. § 8.01-1.

In this case, at the time the plaintiff injuries occurred, section 8.01-581.1 defined "malpractice" as

19

"any tort action"; it did not specifically include breach of contract actions within its definition. However, in 2005, the statute was amended to also include any "breach of contract action for personal injuries." Va. Code Ann. § 8.01-581.1. This amendment is arguably a substantive amendment, rather than a procedural amendment, because a plaintiff whose breach of contract action that accrued before the amendment is effectively stripped of her right to sue and recover damages outside the confines of the Act, if the current version of the Act is applied. Turner v. Wexler, 244 Va. 124 (1992)(applying the definition of "health care provider" that existed at the time the claim accrued because the subsequent amendment was substantive and changed who could be sued under the Act); see also Taylor v. Richmond Mem. Hosp., 38 Va. Cir. 500  (Va. Cir. Ct. 1992)(holding that an amendment to the Act which added professional corporations to the definition of "health care provider" was substantive and should not apply to claim that accrued prior to the amendment). Thus, this court finds that it is appropriate to apply the version of the statute in existence at the time the plaintiff's claims accrued. Under that definition of "malpractice", breaches of contract were not specifically covered by the Act.

Medtronic cites several pre-amendment cases in support of its contention that the Act has always covered all conduct that is inseparable from the health care being rendered, including breach of contract actions, and that the 2005 amendment simply clarified that the Act covered breach of contract claims. However, the problem with these cases is that, unlike the instant case, they all address situations in which some sort of tort or negligence, i.e. breach of a standard of care, is alleged. It appears that the Act covered the claims in the cases cited by Medtronic because the claims in those cases actually alleged some sort of breach of a standard of care, even if the breach technically fell outside the scope of the services rendered, and the plaintiff was trying to characterize

20

the claim as a breach of contract.

For example, in Jappell v. Arlington Health Foundation, 47 Va. Cir. 419, (Va. Cir. Ct. 1998), the case that is most analogous to the instant case of all of the pre-amendment cases that Medtronic cites, a Virginia circuit court held that because the plaintiffs failed to bring their claim pursuant to the Act, they had failed to state a claim against the hospital that gave their daughter HIV-positive blood. Id. at *9. The plaintiffs claimed that hospital was negligent in screening the blood provided to their daughter as part of a blood transfusion at birth, and that the negligence was not covered by the Act because it was not part of the healthcare rendered to their daughter, specifically because the blood was screened prior to their daughter's birth. Id. at *5. The court disagreed and held that the alleged screening, procuring, and storage of blood is healthcare under the Act.[1] Id. at *9.

Medtronic argues that Jappell shows that the Act should also cover the plaintiff's claims in this case because her claims involve part of the health care services rendered by Sentara. However, this court finds that Jappell, and the numerous other cases cited by Medtronic, are distinguishable from the instant case because they include some allegation of negligence with regard to the health care rendered. In other words, the claims in those cases were essentially tort claims that the plaintiffs attempted to couch as breach of contract claims.

Similarly, the court notes that Gressman v. Peoples Service Drug Stores, Inc., 10 Va. Cir. 397 (Va. Cir. Ct., 1988), which is cited in part IV.A.1. of this Opinion and is a pre-amendment case, is also distinguishable from the instant case with regard to whether the plaintiff's claims are covered

---

[1]The court notes that the Jappell court later allowed the plaintiffs to amend their motion for judgment to add a claim for breach of implied warranty as to the blood transfusion under Va. Code. § 32-1.297,which addresses implied warranties with regard to blood or human tissue transfers.

by the Act. As stated above, in <u>Gressman</u>, a Virginia circuit court held that a pharmacist's sale of prescription drugs was subject to the Act because it was "part and parcel of 'personal health service.'" <u>Id.</u> at 409. However, in <u>Gressman</u>, unlike the instant case, the plaintiff's claims involved an allegation of negligence. Thus, it is understandable that those claims were covered by the Act. However, in the instant case, as Medtronic acknowledges, there is no allegation of negligence, or that Sentara breached any standard of care. Instead, the plaintiff asserts solely breach of warranty claims with respect to the sale of the Medtronic IPG devices.

Furthermore, in <u>Gressman</u>, the court based its ruling that the plaintiff's claims were covered by the Act on its determination that a sale of prescription drugs by a pharmacist is not a "sale" within the meaning of the U.C.C. <u>Id.</u>  Because, in the instant case, this court has already determined that Medtronic has failed to show that there is no reasonable possibility that a Virginia court could find that Sentara is a "seller" of Medtronic IPG devices under the U.C.C., this court is not bound by the same logic. In other words, because this court has found that there is the possibility under Virginia law that the sale of the devices could be a "sale" under the U.C.C., and Medtronic has not convinced this court that true breach of contract actions were covered by the Act before the 2005 Amendment, there is the possibility that a Virginia court could find that the plaintiff's claims are not covered by the Act.

Moreover, prior to the 2005 amendment to the Act, the Supreme Court of Virginia had recognized that a claim for breach of contract which was related to a patient's treatment was not necessarily covered by the Act.  In <u>Glisson v. Loxley</u>, 235 Va. 62 (1988), the plaintiff sued her doctor for both breach of contract and battery because the doctor had performed arthroscopic surgery when the plaintiff had expressly directed him not to do so. <u>Id.</u> at 63-64. The doctor filed a demurrer arguing

that the plaintiff had not given him proper notice of her claim, which was required under the Act at that time. Id. The Supreme Court of Virginia held that although the plaintiff's battery claim was covered by the Act, the plaintiff's breach of contract claim was not covered because that claim was based solely on the fact that her doctor had allegedly breached their special agreement not to perform arthroscopic surgery. Id. at 68, 69. The court noted that "the mere fact that plaintiff has sought recovery for pain and suffering does not, standing alone, convert this contract claim into an action in tort." Id. at 69.  Hence, Glissman demonstrates to this court that, under the pre-amendment definition of "malpractice", there is a possibility that a Virginia court could determine that the breach of warranty claims in the instant case are not covered by the Act. See also Freedman v. Chung, No. 175510, 1999 Va. Cir. LEXIS 718 (Va. Cir. Ct. 1999) (pre-amendment case acknowledging that, in Glissman, strict breach of contract claims were not covered by the Act, yet, breach of contract claims that were disguised as tort claims, i.e. claims alleging a breach of a standard of care, were covered under the Act.) Thus, this court finds that Medtronic has failed to meet it burden to show that the plaintiff has no possibility of recovery by not filing her claims under the Act.

Finally, the court is unpersuaded by Medtronic's claim that the plaintiff has no real intention of recovering against both Sentara and Medtronic. The fact that Sentara may be indemnified by Medtronic does not affect the plaintiff's intention to recover against both defendants. Unlike the plaintiff in Linnin v. Michielsens, 372 F. Supp. 2d 811, 824 (E.D. Va. 2005) who had nothing to gain from joining the low-level employee defendant, the plaintiff in this case is capable of actually recovering a judgment against Sentara should it be found liable.

## V.   Conclusion

In sum, the court finds that Medtronic has not shown that there is no reasonable possibility

that the plaintiff could recover against Sentara in a Virginia court. In making this determination, the court acknowledges that this is not a clear cut case because the Supreme Court of Virginia has not addressed the specific issues presented, and the few lower court cases that have are distinguishable from the instant case. The court acknowledges that the state court may deny the plaintiff's claims against Sentara. However, as the Fourth Circuit stresses in <u>Hartley</u>, the burden is not on the plaintiff to show that her claims will succeed, but on the non-moving party to negate the possibility of recovery. In this case, Medtronic has not met this heavy burden. Thus, when faced with the choice of either depriving the plaintiff of her sole opportunity to pursue her claims against Sentara or denying Medtronic access to federal court, this court is compelled to find in favor of the plaintiff. Accordingly, the court **GRANTS** the plaintiff's motion to remand and **ORDERS** this case remanded to the Circuit Court for the City of Hampton, Virginia. Accordingly, this court does not have jurisdiction to rule on Sentara's Motion to Dismiss or Motion to Strike.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for both parties.

It is so **ORDERED**.


　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　Jerome B. Friedman
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE


June 26, 2006
Norfolk, Virginia